**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| KENNY VERLUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 1:25-CV-12567-AK |
| v. | ) | |
| | ) | |
| BARCLAYS BANK DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

**KELLEY, D.J.**

Plaintiff Kenny Verlus, proceeding *pro se*, brings this action against Defendant Barclays

Bank Delaware ("Barclays") alleging inaccurate information on his consumer credit report in

violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b). [Dkt. 1].

Defendant moves to dismiss for lack of standing and failure to state a claim. [Dkt. 14].  For the

reasons discussed below, Defendant's Motion to Dismiss is **GRANTED**.

## I.      BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint [Dkt. 1] and

accepted as true for the purposes of this Motion.  Plaintiff is an individual residing in

Massachusetts. [Id. ¶ 3].  On or about March 30 to April 1, 2025, he requested and received

copies of his consumer credit report from Experian and TransUnion and discovered inaccuracies

in an account reported by Defendant. [Id. ¶ 5].  Specifically, the Experian report displayed

Plaintiff as being 90 days late on credit payments in March 2022, but 150 days late in April

2022. [Id. ¶ 6].  The TransUnion report similarly showed Plaintiff as 90 days late on credit

payments in March 2022, 120 days late in April 2022, but then 120 days late in May 2022. [Id. ¶ 7]. Plaintiff alleges that, based on the number of days in a month, these numbers must be miscalculated. Consequently, Plaintiff reported these inaccuracies to three consumer reporting agencies and requested reinvestigation. [Id. ¶ 8]. The credit reporting agencies "verified the account" but did not update the information in his credit report. [Id. ¶ 9]. After his attempt with the credit reporting agencies failed, on May 2, 2025, Plaintiff contacted Defendant directly, sending a demand letter requesting correction of the alleged inaccuracies, disclosure of their verification procedures, and an investigation. [Id. ¶ 10]. Defendant did not perform the requested actions. [Id. ¶ 10-11]. Plaintiff alleges that, as a result, he suffered lost credit opportunities, including credit cards and business funding, emotional distress, and other damages. [Id. ¶ 12; Dkt. 1-5 at 1]. On September 12, 2025, Plaintiff filed a Complaint, and Defendants moved to dismiss on January 12, 2026.

## II.    LEGAL STANDARD

### A.    12(b)(1): Standing

A motion to dismiss for lack of standing is a challenge to the court's subject matter jurisdiction under Rule 12(b)(1). See Fed. R. Civ. P. 12(b)(1). Review under Rule 12(b)(1) is "similar to that accorded a dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). That is, when "a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). The party "invoking the jurisdiction of a federal court carries the burden of proving its existence," and a "plaintiff cannot rest a jurisdictional basis merely on unsupported conclusions or interpretations of law." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007)

(internal quotation marks and citations omitted).  In other words, the party asserting federal jurisdiction is responsible for establishing that such jurisdiction exists. Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001).  The court's subject matter jurisdiction "must be apparent from the face of the plaintiffs' pleading." Viqueira v. First Bank, 140 F.3d 12, 16, 18 (1st Cir. 2009).  The court "must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case." Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998)).

### B.  12(b)(6): Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556).  However, the court need only accept well-pleaded allegations, not all allegations; "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 557 n.5).  Second, the court must determine whether the

3

factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

## III.    DISCUSSION

Defendant raises two bases for dismissal: lack of standing, and failure to state a claim. Because standing implicates the Court's subject matter jurisdiction, the Court first addresses standing as a threshold issue.  The Court then addresses Defendant's Rule 12(b)(6) arguments.

### A.    Standing

To adequately plead Article III standing, a plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." Wiener v. MIB Grp., Inc., 86 F.4th 76, 84 (1st Cir. 2023) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)).  "An injury is concrete if it 'actually exist[s]' and particularized if it 'affect[s] the plaintiff in a personal and individual way.'" Id. (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339-40 (2016)).  A plaintiff may not plead standing simply through "conclusory assertions" or "unfounded speculation." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016).  Rather, he "bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action." Id. (citations omitted).

Here, Plaintiff fails to plead facts sufficient to establish standing.  The only injuries alleged to have arisen from Plaintiff's inaccurate credit reports are an impairment to his "ability to secure favorable credit terms, including credit cards and business funding" and the denial of several unspecified applications, causing financial loss and emotional harm. [Dkt. 1-5 at 1].

4

While the denial of credit and emotional harm can constitute an injury in fact, Plaintiff's allegations are not supported by sufficient specificity to establish traceability. That is, the facts in the Complaint do not plausibly suggest that potential creditors denied his loan applications *because of* the alleged date miscalculations in his consumer report, rather than for other external reasons. Plaintiff does not, for example, specify the dates and timeframe of his applications, the terms sought, or any stated reasons for the denials, which might provide a causal link between the denials and the miscalculated dates. Nor does Plaintiff allege that his credit score decreased because of the discrepancies or by how much. Likewise, his allegations of emotional distress are "conclusory and unsupported by any specific factual allegations to permit an inference that he has suffered a concrete emotional or mental injury." Verlus v. Experian Info. Sols., Inc., No. 23-CV-11426, 2025 WL 836588, at *1 (D. Mass. Mar. 17, 2025) (citing Maddox v. Bank of N.Y. Mellon Tr. Co., 19 F.4th 58, 66 (2d Cir. 2021)) (dismissing complaint for lack of standing for same Plaintiff as this action on similar claims). While the Court is obligated at this stage to accept all well-pleaded factual allegations, it is not required to accept vague or conclusory assertions. Thus, on this record, Plaintiff has not met his burden of establishing standing to bring this action.

### B.      Fair Credit Reporting Act

Even assuming Plaintiff could establish standing to bring this action, the Complaint does not plead sufficient facts to state a claim under Section 1681s-2(b) of FCRA. FCRA requires "furnishers of information," such as Defendant, to "provide accurate information" to credit reporting agencies, such as Experian and TransUnion. See 15 U.S.C. § 1681s-2(a). The statute outlines procedures for addressing consumer disputes as to the accuracy or completeness of information in credit reports. See Chiang v. Verizon New England Inc., 595 F.3d 26, 34-35 (1st

Cir. 2010).  As relevant to this case, the process is as follows.  First, consumers notify credit reporting agencies of information they disagree with. See 15 U.S.C. § 1681i(a)(1).  The agency must then investigate the dispute. See id.  If the agency determines that the dispute is "frivolous or irrelevant," it may terminate the investigation, so long as it notifies the consumer of such a determination within five business days. Id. § 1681i(a)(3).  Otherwise, the investigation proceeds, and the agency must notify the furnisher within five business days. Id. § 1681i(a)(2)(A).  Once notified, the furnisher must conduct its own parallel investigation of the disputed information and report the results to the agency. Id. § 1681s-2(b); see Chiang, 595 F.3d at 35-36.

Here, Plaintiff argues that Defendants failed to investigate the purported discrepancies in his consumer credit report.  However, Plaintiff fails to allege sufficient facts demonstrating that Defendant's duty to investigate was triggered.  Under the statute, a furnisher's duty to investigate arises only upon notification of a dispute from a consumer reporting agency. See Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 11 (D. Mass. 2004) (holding that the FCRA "provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed"); Catanzaro v. Experian Info. Sols., Inc., 671 F. Supp. 2d 256, 259-60 (D. Mass. 2009) (same); Islam v. Option One Mortg. Corp., 432 F. Supp. 2d 181, 191 (D. Mass. 2006) (same).  The Complaint alleges only that Plaintiff contacted consumer reporting agencies and sent a demand letter to Defendant.  What is missing, however, is any allegation suggesting that the consumer reporting agencies notified Defendant. Without such a notification, Defendant's duty to investigate was not triggered.

In response, Plaintiff argues that FRCA requires consumer reporting agencies to report every dispute to furnishers.  However, the statute does not contain such a requirement.  As

explained, agencies "need not forward frivolous disputes along to furnishers," and may terminate such investigations upon such a determination. In re Gill, No. 09-CV-15976, 2013 WL 3379542, at *5 n.2 (Bankr. D. Mass. July 8, 2013) (quoting Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 615-16 (6th Cir. 2012)); see 15 U.S.C. § 1681i(a)(3).

Plaintiff further argues that his allegation that the consumer reporting agencies "verified [his] account" sufficiently supports an inference that those agencies notified Defendant of his dispute. According to Plaintiff, the agencies could not have verified the information without having first received such information from Defendant. However, the phrase "verified the account" is vague, unspecific, and requires multiple steps of speculation as to the actions of the agencies to reach the inference Plaintiff urges. The Complaint does not specify when Plaintiff contacted the agencies, which agencies responded, when they responded, or any further factual information that would make it plausible rather than merely possible that the agencies not only informally contacted Defendant for information, but also formally notified them of the dispute and triggered their duty to investigate. Accordingly, Plaintiff fails to state a claim under Section 1681s-2(b).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Dkt. 14] is **GRANTED**.

**SO ORDERED.**

Dated: May 14, 2026                         /s/ Angel Kelley
                                            Hon. Angel Kelley
                                            United States District Judge